## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

LAWRENCE RITCHIE,

     Plaintiff,

v.

THE GEO GROUP, INC.;
CITY OF AURORA,

     Defendants.

---

## COMPLAINT & JURY DEMAND

---

Plaintiff Lawrence Ritchie, by and through undersigned counsel, Olivia Kohrs and Danielle

C. Jefferis of Novo Legal Group, LLC, hereby alleges for his Complaint and Jury Demand as

follows:

### I.   INTRODUCTION

1.     In 2018, Lawrence Ritchie was incarcerated in the custody of the United States

Marshals Service ("USMS"), and confined at the Aurora Detention Facility ("ADF"), a detention

center operated and managed by Defendant The GEO Group, Inc. ("GEO"). Defendant GEO is a

for-profit company managing private prisons across the country pursuant to contracts with the

federal government and local and state entities.

2.     On January 17, 2018, Mr. Ritchie was jumped and attacked by a group of USMS

detainees in his unit. What began as a one-on-one verbal dispute escalated into a full-fledged

assault of Mr. Ritchie, who was outnumbered and violently beaten by six to eight other men. As

Mr. Ritchie drifted in and out of consciousness during the prolonged attack, a GEO employee simply watched from his desk. When Mr. Ritchie regained consciousness, he found that no one was around him anymore. He stumbled into the hallway to call for help. No GEO employee had come to his aid or otherwise intervened in the assault.

3. After the assault, Defendant GEO called the Aurora Police Department ("APD"), an entity of the City of Aurora. When the responding APD officer inquired about beginning an investigation, GEO assured the APD that GEO would handle any investigation internally. Defendant GEO instructed the APD not to speak with Mr. Ritchie, and APD complied with no further discussion.

4. After the assault, Mr. Ritchie spent three hours in a holding cell, in extreme pain, vomiting, and losing consciousness before he finally got the attention of a nurse who called an ambulance to take him to the emergency room. There, UC Health doctors determined that Mr. Ritchie had a concussion, a torn eyelid that required stitches, broken ribs and a broken nose, and many bruises and contusions.

5. For the next three months, Mr. Ritchie languished alone in his segregation cell back at the ADF. He was in near-constant physical and psychological pain as he tried to heal from his assault. He believed his ribs were healing incorrectly because of the pain he felt, and he felt depressed, angry, and isolated as he tried to process what had happened to him. Mr. Ritchie was left solely to his own devices to heal—Defendant GEO refused to provide anything beyond Tylenol tablets that Mr. Ritchie purchased with his own money to treat both his physical and psychological trauma. At times, Defendant GEO placed some of the men who assaulted Mr. Ritchie in the segregation unit with him, thereby putting him at substantial risk of being re-

victimized. Still, no APD officer came to speak with Mr. Ritchie, and upon information and belief GEO took no further steps to investigate the assault.

6.      Mr. Ritchie suffered serious physical, mental, and emotional injuries as a result of this assault. Defendant GEO violated its duty of care to Mr. Ritchie by failing to prevent the assault, allowing for the beating to last as long as it did, and failing to provide medical care in the aftermath of the assault. Defendants GEO and City of Aurora conspired to violate Mr. Ritchie's civil rights by failing to uphold his right to be free from state-created danger and discriminating against him as an incarcerated person. While Defendant GEO purported to investigate this assault in-house and assume the responsibility of a state actor, APD simultaneously disavowed its responsibilities as such. Defendant City of Aurora violated Mr. Ritchie's constitutional rights to due process and equal protection and his statutory rights as a crime victim.

7.      To date, Mr. Ritchie continues to suffer the harmful effects of these injuries.

## II. JURISDICTION AND VENUE

8.      This Court has subject matter and personal jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

   a.  Mr. Ritchie brings Claims One through Four pursuant to 42 U.S.C. §§ 1983 and 1985, for which jurisdiction is conferred pursuant to 28 U.S.C. § 1331.

   b.  Mr. Ritchie brings Claim Five pursuant to the state law of Colorado, and jurisdiction is conferred for that claim pursuant to 28 U.S.C. § 1367.

   c.  Mr. Ritchie brings Claims Six and Seven pursuant to the state law of Colorado, and jurisdiction for those claims is conferred pursuant to 28 U.S.C. §§ 1332. At all times relevant to the subject matter of this jurisdiction, Mr. Ritchie was a resident of and

domiciled in the State of Colorado, and Defendant GEO was a corporation incorporated in the State of Florida.

9.     Jurisdiction supporting Plaintiff's claims for attorney fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b). A substantial part of the events and omissions giving rise to the claims asserted in this action occurred within the District of Colorado.

### III. PARTIES

**Plaintiff**

11.     At all times relevant to the subject matter of this litigation, Plaintiff Lawrence Ritchie was a citizen of the United States of America, and a resident of and domiciled in the State of Colorado. He is currently incarcerated in the custody of the Federal Bureau of Prisons at the United States Penitentiary, Beaumont, at 6200 Knauth Rd., Beaumont, Texas, 77705.

**Defendants**

12.     Defendant GEO is a corporation incorporated in the State of Florida, with its corporate headquarters at 4955 Technology Way, Boca Raton, Florida 33431. GEO's registered agent of service in Colorado is Corporate Creations Network, Inc., located at 155 East Boardwalk #490, Fort Collins, Colorado 80525.

13.     Under a contract with the federal government, GEO operates and manages the Aurora Detention Facility at 3130 North Oakland Street, Aurora, Colorado 80010. Defendant GEO is, and has been at all times relevant to the subject matter of this Complaint, a corporation registered to do business under the laws of the State of Colorado.

14.     In addition to direct liability for its own actions and omissions, Defendant GEO is vicariously liable for the acts, omissions, and wrongful conduct of its staff, agents, and employees committed within the scope of their employment.

15.     Defendant City of Aurora is a Colorado municipality. Defendant City of Aurora is responsible for the oversight, supervision, and training of the Aurora Police Department and its officers.

## IV. STATEMENT OF FACTS

*Background*

16.     In early 2018, Mr. Ritchie was housed in the Aurora Detention Facility while in the custody of the USMS.

17.     At all times relevant to the subject matter of this Complaint, Defendant GEO contracted with the federal government to own and operate the ADF, a detention center housing people in the custody of the USMS, in addition to people in U.S. Customs and Immigration Enforcement custody.

18.     When he arrived at the ADF, Defendant GEO assigned Mr. Ritchie to a housing unit with many other USMS detainees. The unit housed mostly Hispanic men at the time, with around five white men and ten to fifteen black men.

19.     In the weeks leading up to his assault, Mr. Ritchie witnessed a couple fights in the unit between Hispanic men. It did not seem to Mr. Ritchie that Defendant GEO had procedures in place to do as much as possible to protect the detainees from fights and serious assaults.

*The Assault*

20.     On January 17, 2018, just a few weeks after arriving in the unit, Mr. Ritchie got into an argument with another USMS detainee over a game.

21.     Suddenly, the argument escalated into an assault, as five to seven more USMS detainees joined in to outnumber and beat Mr. Ritchie to the ground. In full view of at least one Defendant GEO employee, Mr. Ritchie went in and out of consciousness two or three times as the group of men continued to brutally kick and punch him.

22.     No Defendant GEO employee intervened to de-escalate the argument between Mr. Ritchie and the other man before it turned violent, despite the fact that several fights had taken place in the unit leading up to this assault.

23.     Because he was fading in and out of consciousness, Mr. Ritchie had no idea how long the beating continued but it felt like it lasted forever.

24.     While Mr. Ritchie was being beaten, Defendant GEO employee Devios looked on from his desk but did nothing to interfere to stop the assault.

25.     When Mr. Ritchie finally regained consciousness once again, he realized the men who had attacked him were no longer beating him up; they had scattered back into the housing unit. Mr. Ritchie was the only person who sustained injuries. Still no Defendant GEO employee had come to his aid.

26.     Mr. Ritchie picked himself up off the ground and made his way to the hallway—stumbling past two or three Defendant GEO employees who were just standing there and looking at him—to get medical help.

27.     Eventually, a Defendant GEO employee brought Mr. Ritchie a wheelchair to help transport him to the medical unit since he was unable to walk there on his own.

28.     After a cursory examination, Defendant GEO medical staff placed Mr. Ritchie in a holding cell by himself in the medical unit. They gave him nothing to treat his injuries.

29.     Mr. Ritchie was bleeding profusely. He continued to lose and regain consciousness and vomit while he yelled and yelled for someone to help him; he knew something was seriously wrong.

30.     Someone finally listened—three hours later. A Defendant GEO nurse came to heed his cries for help. Recognizing the need for medical care, the nurse called an ambulance, three hours after the assault.

31.     According to the 911 call, the nurse who made the call told the dispatcher that she was reporting a life-threatening emergency, and that "the gentleman got beat up really bad. He has a head injury."

32.     Mr. Ritchie was taken by ambulance to the UC Health hospital where he was evaluated. The doctors told him that he had a concussion, a lacerated eyelid that required stitches, many broken ribs, and numerous bruises and contusions. Upon information and belief, he also had a broken nose and a head injury. Mr. Ritchie stayed in the hospital for four to six hours before being taken back to the ADF.

33.     The USMS has a policy that criminal allegations that arise in detention centers should be referred to the appropriate criminal justice agency.

34.     After the assault, Defendant GEO contacted the APD. According to the police report filed by the APD officer who responded, Defendant GEO instructed the APD not to speak

with Mr. Ritchie. Rather than make her own assessment as to whether to speak with Mr. Ritchie or otherwise investigate this assault, the APD officer deferred to Defendant GEO—a for-profit, non-law-enforcement entity—and complied with those instructions. She agreed with Defendant GEO not to speak with Mr. Ritchie or otherwise investigate the allegations of serious criminal assault he had suffered.

35.     In the body cam footage of the APD officer who responded, the officer inquired about surveillance video of the assault, asking, "And you just saw them like stomping on [Mr. Ritchie] in the video?" To which a Defendant GEO employee responded, "You could see a lot of them. They were just, people were just running up into him and stomping on [Mr. Ritchie]."

36.     That same body cam footage shows the APD officer saying to a GEO employee, "So then I won't talk to him. Um, I will make a report . . . uh, and in my report, I'll say that you guys want to handle it in-house unless you need our assistance in the future." To which the GEO employee responded, "Ok." By purporting to handle these "investigations" in-house, Defendant GEO assumed the responsibility of law enforcement, and thus a state actor.

37.     The APD officer and GEO employee discussed Mr. Ritchie's status as a USMS detainee, potentially facing prison time, to assume, without ever asking Mr. Ritchie, that he probably would not want to press any charges:

**GEO employee:** "If he decides to press charges and he wants to call the local police in the area. Then we will do that."

**Officer:** "So wait for now."

**GEO employee:** "But, uh, these guys, ya, these guys are all pending, the Marshal guys are all pending going to prison."

**Officer:** "Ok, so they're probably not worried about any of this."

**GEO employee:** "Ya."

*The Aftermath of Mr. Ritchie's Assault*

38.     When Mr. Ritchie was brought back to the ADF, he stayed in the medical unit for a few more days before Defendant GEO employees moved Mr. Ritchie into the Administrative Segregation unit.

39.     In Administrative Segregation, Mr. Ritchie was confined alone in a tiny cell for about three months following the assault.

40.     Defendant GEO also sent some of the people who had jumped Mr. Ritchie to Administrative Segregation. Mr. Ritchie could hear these men yelling at him and taunting him while he was still suffering from the injuries they had inflicted on him.

41.     Upon information and belief, the Administrative Segregation unit is also known as the Restrictive Housing Unit ("RHU"). In the RHU, although people spend the majority of their time confined, alone in their cells, there are still times during the day when people are moved through the unit for various reasons—going to their jobs within the facility, taking showers, or visiting the legal library, for example. During this time, detainees can pass in front of each other's doors, or even be out of their cells at the same time.

42.     Immediately after effectively communicating to the individuals who assaulted Mr. Ritchie that there would not be legal consequences for their actions, Defendant GEO placed them in the same unit with Mr. Ritchie. This impunity increased the risk that Mr. Ritchie would be the target of another attack.

43.     Despite the fact that Mr. Ritchie was the only one who was injured, Defendant GEO released these men back into general population before Mr. Ritchie.

44.     During those three long months, despite his requests, Defendant GEO did not provide Mr. Ritchie with any medical care beyond some Tylenol, which Mr. Ritchie had to purchase with his own money.

45.     Mr. Ritchie suffered intense, sustained pain and believed his broken ribs might be healing incorrectly.

46.     Mr. Ritchie also tried to get adequate mental health care from Defendant GEO, including the psychiatric medication that he had been on for years, but Defendant GEO had stopped giving him the medication when he arrived at the facility and continued to deny him his medication or any other form of mental health treatment even after the assault.

47.     This made it even harder for Mr. Ritchie to process his assault, as he languished in segregation.

48.     Mr. Ritchie is currently on medication for post-traumatic stress disorder, has nightmares, and is on medication for depression.

49.     This assault, and the injuries that Mr. Ritchie sustained, continue to impact Mr. Ritchie's life in prison today. He is frustrated and not doing well. He is always on high alert, and he never feels safe. He does not understand why the people that hurt him could get away with what they did, and why no one seemed to care.

*A Culture of Impunity*

50.     Mr. Ritchie's case is not unique. He was neither the first, nor the last person who was assaulted in ADF and then denied the opportunity to press charges against his attackers

because of the implicit agreement between Defendant GEO and Defendant City of Aurora that Defendant GEO will handle criminal investigations "in house."

51.     Defendant GEO's culture of secrecy, combined with the APD's ready willingness to pass its law enforcement responsibilities off to a private, for-profit, non-law-enforcement corporation, created and has further fostered an environment where assaulters act with impunity.

52.     This interdependent relationship and implicit agreement between Defendant GEO and APD allowed Defendant GEO to dictate when and how an assault or other criminal allegation would or would not be investigated within the walls of the ADF, regardless of how a similar allegation would be handled outside of its walls. APD, knowing that Defendant GEO is not itself a law-enforcement agency, willingly agreed to this arrangement.

53.     For example, in May 2017, a former ICE detainee was violently assaulted by two USMS detainees while housed in the RHU (upon information and belief, the same unit Mr. Ritchie would be housed in just seven or eight months later, with his attackers, following his assault). Like Mr. Ritchie months later, APD never gave that man the opportunity to press charges against his attackers.

54.     In another instance, another individual with dwarfism at the ADF was knocked down by another detainee. The APD did not pursue charges because Defendant GEO told the responding officer that the individual did not wish to press charges.

55.     911 calls out of the facility further demonstrate this pattern. In 911 call after 911 call, Defendant GEO told Aurora Dispatch that they didn't want anyone to come out to investigate—they just needed an incident number. Defendant City of Aurora continued to adhere

to this system with Defendant GEO and did not pursue investigations of criminal allegations that arose within the ADF.

56.     The ability of Defendant GEO to dictate the terms of APD investigations of criminal allegations allowed Defendant GEO to maintain its secrecy, and altogether avoid transparency or accountability, and allowed APD to avoid the duties it has to the community that it serves when that community member is incarcerated.

57.     John Walsh, former U.S. Attorney for the District of Colorado, told the media that, in Mr. Ritchie's situation, "Law enforcement needs to be investigating that case. It is something where there is video, there is ample evidence. We've got a situation where GEO is downplaying what has happened, and Aurora [Police Department] is accepting that." He went on to say, "When you have someone that has been so seriously injured that they end up in the hospital, you've got to be able to go after that case for the protection not only of that victim, but of everyone else in the facility."

58.     The Colorado General Assembly has found that the "full and voluntary cooperation of victims of and witnesses to crimes with state and local law enforcement agencies as to such crimes *is imperative* for the general effectiveness and well-being of the criminal justice system of [Colorado]." Colo. Rev. Stat. § 24-4.1-301 (emphasis added).

59.     The General Assembly enacted the Colorado Victim Rights Act "to assume that all victims of and witnesses to crimes are honored and protected by law enforcement agencies . . . in a manner no less vigorous than the protection afforded criminal defendants." *Id*.

60.     To "preserve and protect a victim's rights to justice and due process," crime victims have the "right to be treated with fairness, respect, and dignity, and to be free from intimidation,

harassment, or abuse, throughout the criminal justice process." Colo. Rev. Stat. § 24-4.1-302.5(1)(a).

61.     Crime victims also have the "right to be informed of and present for all critical stages of the criminal justice process," including the filing of charges or the decision *not to file charges* against a person accused of a crime. Colo. Rev. Stat. §§ 24-4.1-302.5(1)(b); 24-4.1-302(2)(a)-(a.5).

## V.  STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Fourteenth Amendment Violation – Due Process
Violation of the Right to Be Free From State-Created Danger
Against Defendants GEO and City of Aurora**

62.     Mr. Ritchie hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63.     At all times relevant to this Complaint, Defendant GEO was acting under color of state law by insisting that it was authorized to take allegations of criminal law violations, normally the responsibility of the APD, "in house." In doing so, Defendant GEO assumed the responsibility of a state actor and, effectively, became an agent of the state.

64.     At all times relevant to this Complaint, Defendant City of Aurora was acting under color of state law.

65.     At all times relevant to this Complaint, Mr. Ritchie had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution not to be deprived of liberty without due process of law, which encompassed his right to be free from state-created danger.

66.     At all times relevant to this Complaint, any reasonable employee of a detention facility and police officer knew or should have known of this clearly established right.

67.     Defendants' actions and inactions, as described herein, deprived Mr. Ritchie of his right not to be deprived of liberty without due process of law, which encompassed his right to be free from state-created danger.

68.     Defendants' actions and inactions, as described herein, constituted a pattern and practice and affirmatively created a danger of violence in the ADF, where detainees observed that they could act violently with impunity because neither Defendant would investigate or otherwise pursue allegations of criminal assault.

69.     Mr. Ritchie was a member of two limited and specifically definable groups: (1) an incarcerated person, who depends on his jailers (in this case, Defendant GEO) to provide his basic human needs, including protection from harm, and (2) a victim of a violent prison assault, which makes him vulnerable and increases the risk that he will be targeted again.

70.     Defendants' actions and inactions, as described herein, affirmatively put Mr. Ritchie at substantial risk of serious, immediate, and proximate harm.

71.     Defendants' actions and inactions, as described herein, created substantial risk of serious, immediate, and proximate harm to Mr. Ritchie that was obvious and known.

72.     When Defendants engaged in the conduct described herein, they acted recklessly and in conscious disregard of that substantial risk of harm.

73.     Defendants' conduct, as described herein, when viewed in total shocks the conscience.

74.     Defendants engaged in these actions and inactions, as described herein, intentionally, willfully, and wantonly.

75.     The actions and inactions described herein were engaged in pursuant to the custom, policy, and practice of Defendant City of Aurora, which failed to supervise, train, or discipline regarding its agents—APD officers—to investigate criminal allegations arising in the ADF and to properly uphold crime victims' rights.

76.     The actions and inactions of both Defendants as described herein deprived Mr. Ritchie of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages, including but not limited to severe emotional distress and pain and suffering, a broken nose and broken ribs, lacerations, bruises, contusions, mental and emotional suffering, prolonged and lasting pain, among other injuries, damages, and losses.

77.     Defendants' actions and inactions were the legal and proximate cause of Mr. Ritchie's damages.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights
### Against Defendants City of Aurora and GEO

78.     Mr. Ritchie hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

79.     At all times relevant to this Complaint, Defendant GEO was acting under color of state law by insisting that it was authorized to take allegations of criminal law violations, normally the responsibility of the APD, "in house." In doing so, Defendant GEO assumed the responsibility of a state actor and, effectively, became an agent of the state.

80.     At all times relevant to this Complaint, Defendant City of Aurora was acting under color of state law.

81.     Defendant City of Aurora and Defendant GEO conspired, combined, and agreed with other individuals and institutions for the purpose of impeding, hindering, obstructing, or defeating the due course of justice, with intent to deny Mr. Ritchie his constitutional rights and/or equal privileges and immunities under law.

82.     Defendant City of Aurora and Defendant GEO had an implicit understanding and agreement that the APD would not investigate criminal allegations arising at the GEO-run Aurora Detention Facility. This agreement between the APD and GEO allowed unconstitutional behavior on the part of APD and GEO to occur, despite clear obligations on both Defendants to uphold the constitutional and statutory rights of crime victims and all facility detainees.

83.     The actions and inactions of both Defendants, as described herein, deprived Mr. Ritchie of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages, including but not limited to severe emotional distress and pain and suffering, a broken nose and broken ribs, lacerations, bruises, contusions, mental and emotional suffering, prolonged and lasting pain, among other injuries, damages, and losses.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 - Constitutional Failure to Train and Supervise**
**Against Defendant City of Aurora**

84.     Mr. Ritchie hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

85.     At all times relevant to this Complaint, Defendant City of Aurora was acting under color of state law.

86.     The unlawful conduct of the APD, as set forth in detail herein, amounts to an informal custom and widespread practice, although not authorized by written law or express municipal policy, so permanent and well-settled as to constitute a custom or usage with the form of law.

87.     Defendant City of Aurora failed to properly train and supervise its employees in the APD to carry out their duties to investigate criminal allegations and uphold the rights of crime victims and all ADF detainees.

88.     Defendant City of Aurora was deliberately indifferent to the constitutional rights of Mr. Ritchie, knowing that he (and all ADF detainees) faced a substantial risk of harm as a result of the culture of impunity that grew in ADF because of Defendants' actions and inactions.

89.     Defendant City of Aurora could have and should have pursued reasonable methods to train and supervise APD officers but failed to do so.

90.     Defendant City of Aurora's policies, customs, or practices in failing to properly train and supervise its APD employees were the moving force and proximate cause of the violation of Mr. Ritchie's constitutional rights.

91.     The actions and inactions of Defendant City of Aurora as described herein deprived Mr. Ritchie of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages, including but not limited to severe emotional distress and pain and suffering, a broken nose and broken ribs, lacerations, bruises,

contusions, mental and emotional suffering, prolonged and lasting pain, among other injuries, damages, and losses.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment Violation – Equal Protection**
**Against Defendant City of Aurora**

92.     Mr. Ritchie hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

93.     At all times relevant to this Complaint, Defendant City of Aurora was acting under color of state law.

94.     Defendant City of Aurora, through its APD officers, knew that an assault had taken place that had resulted in an individual being taken to the hospital.

95.     Defendant City of Aurora knew that the victim, and suspects, were detainees at the ADF.

96.     Defendant City of Aurora, with discriminatory intent, failed to treat Mr. Ritchie as equal to other, non-detainee crime victims and victims of an assault without rational justification. Defendant City of Aurora, noting that, since Mr. Ritchie was pending a possible prison sentence, "[He's] probably not worried about any of this." Because he was a detainee, Defendant City of Aurora decided to not investigate the assault, or even speak with Mr. Ritchie, the victim of the crime, himself.

97.     Defendant City of Aurora's discrimination in refusing to investigate Mr. Ritchie's assault, refusing to interview or speak with Mr. Ritchie, and thus, precluding him from filing charges against his attackers, lead to Mr. Ritchie's continued pain and suffering.

98.     The actions, denials, and justifications described herein intentionally led to Mr. Ritchie's unequal treatment by the government in violation of the Fourteenth Amendment: that no state shall deny to any person within its jurisdiction the equal protection of the laws.

## FIFTH CLAIM FOR RELIEF
### Colo. Rev. Stat. § 24-4.1-301, *et seq*. - Colorado Victim Rights Act
### Against Defendant City of Aurora

99.     Mr. Ritchie hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

100.    The Colorado General Assembly has found that the "full and voluntary cooperation of victims of and witnesses to crimes with state and local law enforcement agencies as to such crimes is imperative for the general effectiveness and well-being of the criminal justice system of [Colorado]." Colo. Rev. Stat. § 24-4.1-301.

101.    Defendant City of Aurora fails to give crime victims and witnesses the opportunity to cooperate with law enforcement agencies, thereby impeding the effectiveness and well-being of the criminal justice system.

102.    The General Assembly enacted the Colorado Victim Rights Act "to assume that all victims of and witnesses to crimes are honored and protected by law enforcement agencies . . . in a manner no less vigorous than the protection afforded criminal defendants." *Id*.

103.    To "preserve and protect a victim's rights to justice and due process," crime victims have the "right to be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Colo. Rev. Stat. § 24-4.1-302.5(1)(a).

104.    Defendant City of Aurora violated Mr. Ritchie's right, as a victim of a crime, to be treated with fairness, respect, and dignity, by assuming he did not want the APD to pursue an investigation because he was likely going to prison and deferring to Defendant GEO's request that GEO assume the responsibility of investigation.

105.    Crime victims also have the "right to be informed of and present for all critical stages of the criminal justice process," including the filing of charges or the decision *not to file charges* against a person accused of a crime. Colo. Rev. Stat. §§ 24-4.1-302.5(1)(b); 24-4.1-302(2)(a)-(a.5).

106.    Defendant City of Aurora violated Mr. Ritchie's right, as a victim of a crime, to be informed of all critical stages of the criminal justice process, including the decision not to file charges against a person accused of a crime, by failing to have any contact with Mr. Ritchie whatsoever and, instead, agreeing with Defendant GEO to defer to GEO taking the investigation "in house."

### SIXTH CLAIM FOR RELIEF
### Negligence – Assault
### Against Defendant GEO

107.    Mr. Ritchie hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

108.    At all times relevant to the subject matter of this Complaint, Mr. Ritchie was a detainee confined to and in Defendant GEO's care. Defendant GEO owed Mr. Ritchie a duty to protect him from harm.

109.    Because Mr. Ritchie was dependent on and under the control of Defendant GEO and its staff, employees, and agent, Mr. Ritchie had a special relationship with Defendant GEO,

such that Defendant GEO had a duty to exercise reasonable care in protecting Mr. Ritchie's health and safety.

110.    Defendant GEO grossly breached that duty when it failed to, *inter alia*, enact policies and procedures to minimize the risk of or otherwise prevent the assault, to intervene in the assault on Mr. Ritchie, or take reasonable steps necessary to mitigate the violence and impact of the assault.

111.    Mr. Ritchie suffered—and continues to suffer—serious injuries as a result of Defendant GEO's breach of its date of care owed to Mr. Ritchie.

112.    Defendant GEO's breach of its duty of care owed to Mr. Ritchie is the proximate cause of the injuries he suffered and continues to suffer.

113.    Defendant GEO is vicariously liable for the acts and omissions of its staff, employees, and agents conducted within the scope of their employment.

**SEVENTH CLAIM FOR RELIEF**
**Negligence – Medical Care**
**Against Defendant GEO**

114.    Mr. Ritchie hereby incorporates all of the paragraphs of this Complaint as though fully set forth herein.

115.    At all times relevant to the subject matter of this Complaint, Mr. Ritchie was a detainee confined to and in Defendant GEO's care. Defendant GEO owed Mr. Ritchie a duty to protect him from harm.

116.    Because Mr. Ritchie was dependent on and under the control of Defendant GEO and its staff, employees, and agent, Mr. Ritchie had a special relationship with Defendant GEO,

such that Defendant GEO had a duty to exercise reasonable care in protecting Mr. Ritchie's health and safety.

117. Defendant GEO grossly breached that duty when it failed to, *inter alia*, provide timely or adequate physical or mental health care to Mr. Ritchie after his assault.

118. Mr. Ritchie suffered—and continues to suffer—serious injuries as a result of Defendant GEO's breach of its date of care owed to Mr. Ritchie.

119. Defendant GEO's breach of its duty of care owed to Mr. Ritchie is the proximate cause of the injuries he suffered and continues to suffer.

120. Defendant GEO is vicariously liable for the acts and omissions of its staff, employees, and agents conducted within the scope of their employment.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lawrence Ritchie requests respectfully that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to the following:

a. Compensatory damages, including but not limited to those for emotional distress and pain and suffering;

b. Actual economic damages and consequential damages arising out of Defendants' conduct;

c. Declaratory relief and other appropriate equitable relief;

d. Punitive damages as allowed by the law;

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorneys fees and costs; and

    g.   Such further relief as justice requires.

**Plaintiff requests a trial to a jury on all issues so triable.**

DATED this 17th day of January, 2020.

Respectfully submitted,

*s/ Olivia Kohrs*
Olivia Kohrs
Novo Legal Group, LLC
4280 Morrison Rd.
Denver, CO 80219
T: 303-335-0250
F: 303-296-4586
E: olivia@novo-legal.com

*s/ Danielle C. Jefferis*
Danielle C. Jefferis, *Of Counsel*
2255 E. Evans Ave., Suite 335
Denver, CO 80208
T: 303-871-6155
E: djefferis@law.du.edu