IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00156-RBJ

LAWRENCE RITCHIE,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT GEO'S MOTION TO DISMISS [Doc. 32]**

---

    Plaintiff Lawrence Ritchie, by and through undersigned counsel, Olivia Kohrs and Danielle C. Jefferis of Novo Legal Group, L.L.C., hereby submits the following Response to Defendant GEO's Motion to Dismiss his Second Amended Complaint [Doc. 32].

## INTRODUCTION

    Mr. Ritchie was brutally assaulted when he was outnumbered and jumped by a group of men in his housing unit while detained at the Aurora Detention Facility. What began as a one-on-one verbal dispute over a game escalated gradually over the course of about fifteen minutes into a violent assault that Defendant GEO employee referred to as a "stomping"—yet no Defendant GEO employee intervened to stop or de-escalate the fight before it turned brutal. Although Defendant GEO would recharacterize the fight as three separate "assaultive events," and analyze each in isolation to argue that it did not owe Mr. Ritchie any duty of care, the fight was, in reality, singular, continuous, and spanning three separate locations in the facility—giving Defendant GEO plenty

of opportunities to intervene. Despite the gradually escalating nature of the argument, despite several fights having taken place in the unit leading up to the assault, and despite Mr. Ritchie's own self-reports that he was worried he would do something impulsive or violent because Defendant GEO was refusing him necessary mental health care, Defendant GEO failed to take reasonable actions at any point—from the first disagreement to the final, group assault on Mr. Ritchie—to intervene or de-escalate the situation.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Mr. Ritchie's Arrival at the Aurora Detention Facility

In late 2017, the United States Marshals Service ("USMS") took Mr. Lawrence Ritchie into custody and confined him in the GEO-owned and operated Aurora Detention Facility (ADF) in Aurora, Colorado. Second Amended Complaint ("Second Am. Compl.") [Doc. 31] ¶ 17.

Mr. Ritchie was detained at the ADF in a housing unit with other USMS detainees. *Id.* ¶ 19. The unit housed predominantly Hispanic men at the time, with around five white men and ten to fifteen Black men. *Id.* Prison politics often fall along group identity lines. *Id.* ¶ 29. These identities and groups, which often serve as a source of safety or protection in numbers, are very frequently drawn along racial lines. *Id.* Because Mr. Ritchie is white and was largely outnumbered at the time in his unit, he did not have a large group with which to associate, or from which to draw safety. *Id.* In the weeks leading up to his assault, Mr. Ritchie had witnessed a couple fights between Hispanic men, and had witnessed Defendant GEO staff doing little to nothing to prevent or stop the confrontations. *Id.* ¶ 19

Mr. Ritchie, upon intake at the facility, reported anxiety, depression, and bipolar disorder to Defendant GEO staff members. *Id.* ¶ 20. Defendant GEO staff themselves diagnosed Mr. Ritchie

2

with "bipolar disorder, type 1, MRE depressed" on December 7, 2017. *Id.* Mr. Ritchie, upon information and belief, had been transferred to the ADF from a different jail because he had been struggling to access proper medication or mental health treatment at his previous facility. *Id.* ¶ 21. Mr. Ritchie was familiar both with the combination of medications that worked for him, and with what happened when he was left untreated. *Id.* ¶ 22. When left untreated, Mr. Ritchie acted impulsively and, at times, violently. *Id*. When he was taken into federal custody by the USMS, Mr. Ritchie was taken off of the medications that worked for him. *Id*. Although he had been transferred to the ADF to address his mental health needs and his inability to access his proper medications at his previous facility, Mr. Ritchie remained unable to access those medications at the ADF, despite his requests. *Id.* ¶ 24. Defendant GEO instead prescribed different, and ineffective, medications. *Id.*

On December 12, 2017, Mr. Ritchie self-reported to Defendant GEO that he was not doing well, and that he was worried that he would do something impulsive or act violently if pushed, stating that he had acted impulsively and violently in the past when he was off his medications. *Id.* ¶ 25. Mr. Ritchie continued to report concerns about his mental health treatment to Defendant GEO, including that he was having panic attacks, insomnia, and nightmares. *Id.* ¶ 26. Unfortunately, Defendant GEO staff did not take Mr. Ritchie's self-reports of fear of impulsive or violent behavior seriously, and about a month later Mr. Ritchie was involved in the instant altercation that ultimately escalated into an assault and left him seriously injured. *Id.*

II.   **Mr. Ritchie's Assault**

On January 17, 2018, just shortly after his arrival, Mr. Ritchie was jumped and assaulted by a group of men in his unit. *Id.* ¶ 2. What began as a one-on-one dispute escalated into a full-

fledged assault of Mr. Ritchie, who was ultimately outnumbered and violently beaten by at least five other men. *Id*. This assault spanned three separate locations in the facility, but at no point did GEO staff intervene to de-escalate the situation before it turned violent. *Id*.

On day of the assault, Mr. Ritchie got into an argument in the recreation yard with another USMS detainee over a game of handball. *Id.* ¶ 27. Their verbal argument escalated, and the other detainee—a Hispanic man—started calling Mr. Ritchie names. *Id.* It is well-known and accepted in prison culture and politics that if a person is verbally threatened or insulted, like by name-calling, and he does not respond to that threat or insult, he is putting himself at risk of being perceived as weak and thus targeted for physical attack or exploitation. *Id.* ¶ 28. It does not take long for someone who has spent time in prison, like Mr. Ritchie, to learn the necessity of responding to those kinds of threats or insults if he does not want to be perceived or labeled as "weak." *Id*. This is particularly critical when someone is outnumbered in the unit, like Mr. Ritchie, and does not have the benefit of a group to draw safety and protection from. *Id.* ¶ 29.

To protect himself, Mr. Ritchie punched the other detainee to demonstrate that he was neither weak, nor a viable target for future attack or exploitation. *Id.* ¶ 30. Despite this verbal argument, and the escalation to a punch being thrown, Defendant GEO staff did nothing to de-escalate this argument or intervene. *Id.* ¶ 31. Instead, the fight continued to escalate in a second location. *Id.* ¶ 32.

Mr. Ritchie and the other detainee returned to the unit and both stormed into the same cell. *Id*. There, they continued to fight, which lasted about three minutes. *Id.* During this time, other detainees in the unit had noticed that something was going on and had begun gathering around the cell door. *Id.* But again, Defendant GEO staff did nothing to investigate or break up the large

gathering in the corner, or otherwise intervene in the obvious disturbance within the unit. *Id.* Instead, the fight continued to escalate in a third location.

When Mr. Ritchie exited the cell, bleeding, a group of Hispanic men were already gathered there, waiting for him. *Id.* ¶ 33. Mr. Ritchie and another detainee were shouting at each other which drew the attention of others in the unit, and even more detainees gathered around and began circling Mr. Ritchie like they were going to attack him. *Id.* ¶¶ 33-34. While this happened, Defendant GEO employees talked to each other and paid no notice to what was going on in plain view within the unit. *Id.* ¶ 35.

This was ultimately when the argument escalated to its final tipping point. At least five detainees closed in and beat Mr. Ritchie onto the ground. *Id.* ¶ 36. Mr. Ritchie went in and out of consciousness as the group of men continued to brutally kick and punch him while at least one Defendant GEO employee looked on from the other side of the unit. *Id.* ¶¶ 36, 39.

No Defendant GEO employee intervened to stop the fight that spanned three separate locations in the facility, despite the gradually escalating nature of the argument, despite several fights having taken place in the unit leading up to the assault, and despite Mr. Ritchie's own self-reports that he was worried he would do something impulsive or violent because of his inability to access the mental health care he needed. *Id.* ¶¶ 25-26, 37.

### III. The Aftermath of Mr. Ritchie's Assault

Mr. Ritchie laid on the floor unattended for several agonizing minutes before GEO employees finally helped him to his feet and to a table, before eventually assisting him out of the unit. *Id.* ¶¶ 3, 40-41. Mr. Ritchie received a cursory examination before Defendant GEO placed him in a holding cell. *Id.* ¶¶ 5, 42-44. He spent three hours bleeding, in extreme pain, vomiting,

and losing consciousness before he finally got the attention of a nurse who called an ambulance to take him to a hospital emergency room. *Id*. The nurse reported a life-threatening emergency to the 911 dispatcher, stating that "the gentleman got beat up really bad. He has a head injury." *Id.* ¶ 45. Mr. Ritchie was taken to the UC Health hospital where doctors there determined that Mr. Ritchie had a concussion and a torn eyelid that required stitches. *Id.* ¶¶ 5, 46. Upon information and belief, Mr. Ritchie also suffered broken ribs and a broken nose, as well as bruises and contusions. *Id*.

After the assault, Defendant GEO called the Aurora Police Department ("APD"). *Id.* ¶¶ 4, 48. Rather than allow the APD to begin an investigation, the call was just for show. *Id.* ¶ 48. Defendant GEO staff assured the APD that GEO would handle any investigation internally. *Id*. Defendant GEO instructed the APD not to speak with Mr. Ritchie or otherwise investigate the assault, thus continuing to keep allegations of violence like Mr. Ritchie's out of the public eye. *Id.* ¶¶ 4, 50. A Defendant GEO employee told the police officer who responded that since the USMS detainees are "all pending going to prison," they're "probably not worried about any of this." *Id.* ¶ 53. This policy requiring Defendant GEO to dictate the terms of law enforcement investigations of criminal allegations and handle investigations "in-house," whether implicit or explicit, allows Defendant GEO to maintain its secrecy, preserve its public image, and avoid transparency or accountability. *Id.* ¶¶ 64-74. This, in turn, allows individuals inside the ADF to act with impunity.

For the three months following his assault, Mr. Ritchie languished alone in a segregation cell at ADF. *Id.* ¶¶ 6, 54-55. He was in near constant physical and psychological pain as he tried to heal from his assault. *Id.* ¶ 6. He believed his ribs were healing incorrectly because of the pain that he felt, and he felt depressed, angry, and isolated. *Id.* ¶¶ 6, 59. He was left solely to his own devices to heal both his physical and psychological trauma. *Id.* ¶¶ 6, 60-61. At times, Defendant

6

GEO even placed some of the men who had assaulted Mr. Ritchie in the unit with him, putting him at substantial risk of re-victimization. *Id.* at ¶¶ 6, 56-58. Still, no APD officer came to speak with Mr. Ritchie, and, upon information and belief, Defendant GEO took no further steps to investigate the assault. *Id.* ¶ 6. Mr. Ritchie continues to suffer the harmful effects of his injuries. *Id.* ¶¶ 62-63.

Mr. Ritchie filed his Second Amended Complaint on July 6, 2020. *See* Second Am. Compl. Defendant GEO filed a Motion to Dismiss Second Amended Complaint [Doc. 32], arguing that, under Federal Rule of Civil Procedure 12(b)(6), Mr. Ritchie's claim against it should be dismissed. *See* Doc. 32.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S.

89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). At this stage of the litigation, a court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## ARGUMENT

**I.   Mr. Ritchie's Complaint states a claim for negligence against Defendant GEO**

Mr. Ritchie brings a state-law tort claim for negligence against Defendant GEO for its failure to protect his safety and health, which resulted in lasting and significant injuries. This claim is in federal court on diversity jurisdiction. Defendant GEO argues in its Motion to Dismiss that Mr. Ritchie's negligence claim against it should be dismissed. Doc. 32, 1.

To establish negligence under Colorado law, "a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury." *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002) (citation omitted). Mr. Ritchie's straightforward allegations and their accompanying inferences establish the essential elements for his claim of negligence. A court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). When accepted as true, Mr. Ritchie's Second Amended Complaint contains sufficient factual content to state a plausible claim—that Defendant GEO owed him a duty of care, that Defendant GEO breached that duty, that Mr. Ritchie was injured, and that Defendant GEO's breach caused that injury.

   A. <u>Mr. Ritchie sufficiently alleges that Defendant GEO owed him a duty of care.</u>

Mr. Ritchie pleads that, as an incarcerated man dependent on GEO to provide basic human needs, including protection, Defendant GEO owed Mr. Ritchie a duty. Second Am. Compl. ¶¶ 76-77. Defendant GEO does not deny it owed Mr. Ritchie a duty—it "assumes that a special relationship existed between GEO and Ritchie." Doc. 32 at 4. The Constitution requires prisons and jails to provide "reasonable safety" to their prisoners, including protection from assault. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Defendant GEO argues that the scope of that duty, however, does not "ensure Ritchie from assault by another inmate." Doc. 32 at 4. Defendant GEO argues that "the duty imposed is limited to a duty to take reasonable action to prevent or intervene in an actual or imminent inmate attack where the prison official actually knows or has reason to know of the attack and has the ability and opportunity to prevent it or intervene to stop it." *Id.* at 5.

Under Defendant GEO's own formulation of the duty it states that it owed to Mr. Ritchie—to take reasonable action to protect him from harm that it knows of or should know of—Defendant GEO breached its duty to Mr. Ritchie.

B. Mr. Ritchie sufficiently alleges that Defendant GEO breached that duty of care.

The next question, one of fact, is whether Defendant GEO breached its duty to Mr. Ritchie. *Hall v. McBryde*, 919 P.2d 910, 913 (Colo. App. 1996) (citations omitted). Mr. Ritchie pleads that Defendant GEO breached the duty of care it owed him by, *inter alia*, failing to enact policies or procedures or take any action that would minimize the risk of or otherwise prevent the assault, to intervene in the assault, or to take reasonable steps mitigate the violence and impact of the assault. *Id.* ¶ 78; *see e.g., id.* ¶¶ 2 (failure to intervene and/or de-escalate the situation), 26 (failure to take Mr. Ritchie's self-reports or fear of impulsive or violent behavior seriously), 31-32 (failure to

intervene and/or de-escalate the situation), 35-37 (failure to intervene and/or de-escalate the situation), 39 (failure to intervene and/or de-escalate the situation), 42-44 (failure to get adequate medical attention), 48-53 (failure to allow law enforcement to conduct an investigation), 64-74 (creation and fostering of culture of impunity through denial of investigation).

Defendant GEO seeks to separate and evaluate each part of the fight at issue in isolation to argue that it had no duty to protect Mr. Ritchie at each individual juncture, and thus did not breach that duty. Likewise, Defendant GEO seeks the Court's consideration of video footage of only the final assault on Mr. Ritchie. Regardless of whether the Court takes consideration of the video, the video only shows one portion, the final chapter, of the story. To evaluate Mr. Ritchie's Complaint and its factual plausibility, the Court must consider the entire fight, from start to finish, not merely the portion, in isolation, that Defendant GEO presents.

The proper inquiry here is not whether Defendant GEO's actions constituted a breach of duty when the fight is divided into and analyzed in discrete parts, but rather whether Mr. Ritchie's Second Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It does. This plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

To look at the parts of the fight separately denies the reality of what actually occurred that day, and reframes Mr. Ritchie's claim against Defendant GEO. Mr. Ritchie, however, is the master

of his Complaint. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (10th Cir. 2020) (citing *Blesdoe v. Vanderbilt*, 934 F.3d 1112, 1119 (10th Cir. 2019). As he alleges, these instances were not three separate, unrelated fights. Though the fight took place in three separate locations, it was one fight that escalated gradually and deliberately over the course of approximately fifteen minutes. Defendant GEO cannot abdicate it's duty to take reasonable action just by saying that Mr. Ritchie was essentially "asking for it" when he threw the first punch in an effort to protect himself in the way he knew how. Defendant GEO had fifteen minutes, various employees, three separate locations, and a variety of warning signs—not the least of which was Mr. Ritchie's own self-report that he was worried he might act impulsively or violently without his proper medication—to recognize that a potentially dangerous fight was developing. Defendant GEO had a wealth of opportunities to recognize that an attack was about to take place that could result in serious injury to someone, detainee or guard alike, within the facility, and to take reasonable action to try to intervene or de-escalate.

Mr. Ritchie plausibly alleges that Defendant GEO breached its duty of care to him by failing to exercise reasonable care to intervene *at any time* during the escalation of the fight to prevent it becoming what Defendant GEO staff referred to as a "stomping." Second Am. Compl. ¶ 51. While Defendant GEO's responses to each individual part of the continually escalating fight may or may not, if taken in isolation, give rise to a breach of duty, that is not Mr. Ritchie's allegation here. It was, as Mr. Ritchie alleges, the cumulative effect of each instance of inaction and failure to intervene that ultimately led to Mr. Ritchie's assault and considerable injuries.

In no uncertain terms, the job of Defendant GEO staff is largely to protect the safety and security of the facility both for the detainees, and for themselves. This necessarily requires that

11

guards watch what is happening within the facility, and that they intervene when necessary. Reasonable care requires that they not simply willfully ignore what is going on around them—particularly when that involves threats, verbal fights, punches being thrown, people storming into the unit, or groups of detainees gathering together in wait. Defendant GEO argues that the assault happened too fast and that it was too dangerous for anyone to intervene, but it was Defendant GEO that allowed the fight to get to that point in the first place. The altercation began as a verbal argument between two people, over fifteen minutes and three separate locations; there were opportunities for Defendant GEO to intervene before the fight rose to that level of danger. By failing to intervene at any of those instances, Defendant GEO breached its duty to Mr. Ritchie.

    C. <u>Mr. Ritchie sufficiently alleges injury, and that Defendant GEO's breach was the cause of that injury.</u>

Finally, Mr. Ritchie alleges that he was injured in this assault, and that Defendant GEO's actions and omissions were the cause of his damages, including the pain and suffering he experienced from the "stomping" that he endured as a result of Defendant GEO's negligent failure to provide reasonable safety for Mr. Ritchie—including a concussion, a lacerated eyelid, broken ribs and nose, bruises, contusions, and psychological trauma. Second Am. Compl. ¶¶ 3, 5-6, 40-46, 54-63.

## CONCLUSION

Taking as true all facts pleaded in Mr. Ritchie's Second Amended Complaint [Doc. 31], Mr. Ritchie has stated a claim upon which relief may be granted. For the reasons statement above, Defendant GEO's Motion to Dismiss Second Amended Complaint [Doc. 32], should be denied.

Respectfully submitted this 24th day of August, 2020.

*s/ Olivia Kohrs*
Olivia Kohrs
Novo Legal Group, LLC
4280 Morrison Rd.
Denver, CO 80219
Telephone: (303) 335-0250
Email: olivia@novo-legal.com

*s/ Danielle C. Jefferis*
Danielle C. Jefferis, *Of Counsel*
Novo Legal Group, LLC
4280 Morrison Rd.
Denver, CO 80219
Telephone: (303) 335-0250
Email: danielle@novo-legal.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification to the following recipients:

Gordon Vaughan
gvaughan@vaughandemuro.com

*Counsel for Defendant GEO Group, Inc.*

*s/ Olivia Kohrs*
Olivia Kohrs